# U.S. District Court
## Eastern District of Virginia – (Alexandria)
## CRIMINAL DOCKET FOR CASE #: <u>1:17–mj–00358–TCB</u> All Defendants
## *SEALED*
### *Internal Use Only*

Case title: USA v. Papadopoulos

Date Filed: 07/28/2017
Date Terminated: 07/28/2017

Assigned to: Magistrate Judge Theresa Carroll Buchanan

### **Defendant (1)**

**George Papadopoulos**
*TERMINATED: 07/28/2017*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| None | |

### **Plaintiff**

**USA**

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/27/2017 | | 3 | Arrest of George Papadopoulos in Eastern District of Virginia. (tfitz, ) (Entered: 07/31/2017) |
| 07/28/2017 | <u>1</u> | 4 | Executed Warrant and R40 Documents in case as to George Papadopoulos. (tfitz, ) (Entered: 07/31/2017) |

| 07/28/2017 | 2 | 19 | Minute Entry for proceedings held before Magistrate Judge Theresa Carroll Buchanan:Initial Appearance in Rule 5(c)(3) Proceedings as to George Papadopoulos held on 7/28/2017. USA appeared through B. VanGratt. Deft appeared w/o counsel. Deft informed of rights, charges and penalties. Deft stated that he already has counsel–not present. USA does not seek detention at this time. Deft is released on Bond w/conditions and shall appear in court in the District of Columbia as instructed. (Tape #FTR.)(tfitz, ) (Entered: 07/31/2017) |
| --- | --- | --- | --- |
| 07/28/2017 | 3 | 20 | ORDER Setting Conditions of Release as to George Papadopoulos (1) PR BOND as to George Papadopoulos.. Signed by Magistrate Judge Theresa Carroll Buchanan on 7/28/17. (tfitz, ) (Entered: 07/31/2017) |
| 07/28/2017 | | 23 | (Court only) ***Terminated defendant George Papadopoulos, pending deadlines, and motions. (tfitz, ) (Entered: 07/31/2017) |

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Theresa Carroll Buchanan
(judge_buchanan@vaed.uscourts.gov, tcb_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:7357112@vaed.uscourts.gov
Subject:Activity in Case 17-358VAED Sealed v. Sealed (Redacted Notice)
```
Content–Type: text/html

## U.S. District Court

## Eastern District of Virginia –

## Notice of Electronic Filing

The following transaction was entered on 7/31/2017 at 10:06 AM EDT and filed on 7/27/2017

| | |
|---|---|
| **Case Name:** | USA v. Papadopoulos |
| **Case Number:** | 1:17–mj–00358–TCB *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Arrest of George Papadopoulos in Eastern District of Virginia. (tfitz, )**

**1:17–mj–00358–TCB *SEALED*–1 No electronic public notice will be sent because the case/entry is sealed.**

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

*(handwritten: Alex # 1:17mj358)*

United States of America
v.
GEORGE PAPADOPOULOS

)
)
)
)
)
)

Case No: 1:17-mj-536
Assigned To: Chief Judge Beryl A Howell
Date Assigned: 7/28/2017
Description: Complaint

*FILED*
*JUL 2 8 2017*
*CLERK, U.S. DISTRICT COURT*
*ALEXANDRIA, VA*

*Defendant*

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     George Papadopoulos                                                   ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment          ☐ Superseding Indictment          ☐ Information          ☐ Superseding Information          ☑ Complaint

☐ Probation Violation Petition          ☐ Supervised Release Violation Petition          ☐ Violation Notice          ☐ Order of the Court

This offense is briefly described as follows:

   18 U.S.C. § 1001 (Making a False Statement)
   18 U.S.C. § 1519 (Obstruction)

Date:     07/28/2017

*Issuing officer's signature*

City and state:     Washington, D.C.

Hon. Beryl A. Howell, Chief U.S. District Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 7/28/17, and the person was arrested on *(date)* 7/27/17 at *(city and state)* Dulles Airport. |
| Date: 7/28/17 |
| *Arresting officer's signature* |
| for FBI |
| *Printed name and title* |

AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**

JUL 28 2017

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT

for the

District of Columbia

*Aug #*
*1:17mj358*

United States of America
v.

GEORGE PAPADOPOULOS

)
)
)
)
)
)
)

Case No: 1:17-mj-536
Assigned To: Chief Judge Beryl A Howell
Date Assigned: 7/28/2017
Description: Complaint

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January and February, 2017 _____ in the county of _____ Washington _____ in the
_____ District of _____ Columbia _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001 | Making a False Statement |
| 18 U.S.C. § 1519 | Obstruction |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Robert M. Gibbs
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 07/28/2017 _____

_____
*Judge's signature*

City and state: _____ Washington, D.C. _____

Hon. Beryl A. Howell, Chief U.S. District Judge
*Printed name and title*

**FILED**

JUL 28 2017

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

GEORGE PAPADOPOULOS,

Defendant.

Case No: 1:17-mj-536
Assigned To: Chief Judge Beryl A Howell
Date Assigned: 7/28/2017
Description: Complaint

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Robert M. Gibbs, being first duly sworn, hereby depose and state as follows:

  1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and
have served in this capacity since 2003. I have conducted numerous investigations into complex
domestic and extraterritorial crimes, including crimes related to espionage and foreign influence.

  2. I am familiar with the facts and circumstances set forth below from my
examination of various reports and records, my review of publicly available information, and my
conversations with law enforcement officers and others. Because this affidavit is being
submitted for the limited purpose of establishing probable cause for a criminal complaint, it does
not set forth every fact learned in the course of this investigation.

### The Defendant

  3. Based on the investigation to date, I know that GEORGE
PAPADOPOULOS, the defendant, served as a foreign policy advisor for the presidential
campaign of Donald J. Trump (the "Campaign") starting no later than on or about March 16,
2016 and continuing through most of the Campaign. PAPADOPOULOS had previously been a
foreign policy advisor for a different presidential candidate.

4.    On or about March 21, 2016, then-presidential candidate Donald J. Trump met with *The Washington Post* and provided the names of five individuals identified as members of the Campaign's foreign policy team, including GEORGE PAPADOPOULOS, the defendant.

## The Investigation

5.    At all times relevant to the offenses described herein, the FBI, as part of its counterintelligence mission, had an open investigation into the Russian government's efforts to interfere in the 2016 presidential election, including the nature of any links between individuals associated with the Campaign and the Russian government, and into whether there was any coordination between the Campaign and the Russian government. The investigation included assessing whether any crimes were committed. The investigation was opened and coordinated in Washington, D.C. and had commenced in 2016. The investigation was ongoing in January 2017 when two FBI special agents (the "Agents") interviewed GEORGE PAPADOPOULOS, the defendant.

6.    Based on my training and experience, I am aware that the Russian government and its intelligence and security services frequently make use of non-governmental intermediaries to achieve their foreign intelligence objectives. This structure serves in part to hide the overt involvement of the Russian government and provides deniability about the involvement of the government and its intelligence and security services. I am aware that the Russian government has used individuals associated with academia and think tanks in such a capacity. As a result, the investigation has included the extent to which such intermediaries had contact with individuals associated with the Campaign, including GEORGE PAPADOPOULOS, the defendant.

## Overview of the Offenses

2

7.      Based on the information provided herein, there is probable cause to believe that on or about January 27, 2017, GEORGE PAPADOPOULOS, the defendant, made material false statements and omitted material facts to the FBI regarding his interactions during the Campaign with foreign contacts, including Russian nationals.  On that date, PAPADOPOULOS met with the Agents, and after being advised that the failure to be truthful could lead to criminal penalties, PAPADOPOULOS made material false statements and omitted material facts.  For example, PAPADOPOULOS falsely described his interactions with a certain foreign contact who discussed "dirt" related to emails concerning then-presidential candidate Hillary Clinton, when, in truth and in fact, PAPADOPOULOS had repeated communications with that foreign contact while PAPADOPOULOS was serving as a foreign policy advisor to the Campaign.

8.      There is also probable cause to believe that on or about February 17, 2017, GEORGE PAPADOPOULOS, the defendant, obstructed the FBI's investigation that was being coordinated in the District of Columbia.  After speaking again to the FBI on or about February 16, 2017, and reiterating his purported willingness to cooperate with the FBI's investigation, PAPADOPOULOS the next day shut down his existing Facebook account, which he had maintained since approximately August 2005.  That account contained communications he had with Russian nationals and other foreign contacts during the Campaign that contradicted statements he had made to the FBI.  Shortly after he shut down his account, PAPADOPOULOS created a new Facebook account that contained no communications he had during the Campaign with foreign contacts.

9.      I submit that the conduct of GEORGE PAPADOPOULOS, the defendant, as described herein, had a negative impact on the FBI's ongoing investigation into the existence

3

of any links or coordination between individuals associated with the Campaign and the Russian government in connection with Russia's efforts to interfere with the 2016 presidential election by, among other things, concealing links to individuals and intermediaries associated with the Russian government.

### Defendant's False Statements to the FBI

10.     On or about January 27, 2017, the Agents met with GEORGE PAPADOPOULOS, the defendant, in Chicago, Illinois. PAPADOPOULOS agreed to a voluntary interview.

11.     The Agents informed PAPADOPOULOS that the FBI was investigating interference by the Russian government in the 2016 presidential election and whether any individuals related to the Campaign were involved. The Agents, using an FBI recording device, taped the interview.

12.     The Agents informed PAPADOPOULOS that he needed to be truthful and warned that he could get "in trouble" if he lied. The Agents also advised him that lying to them "is a federal offense." They confirmed that the interview was "completely voluntary."

### *False Statements by PAPADOPOULOS Regarding Foreign Contact 1*

13.     During the course of his January 27, 2017 interview with the FBI, GEORGE PAPADOPOULOS, the defendant, acknowledged that he knew a particular professor of diplomacy based in London ("Foreign Contact 1"). Foreign Contact 1 is a citizen of a country in the Mediterranean and an associate of several Russian nationals, as described further below. PAPADOPOULOS stated that Foreign Contact 1 told him that the Russians had "dirt" on Clinton.

      a.     PAPADOPOULOS told the Agents that, in the early part of 2016, Foreign Contact 1 "actually told me that the Russians had emails of Clinton. That guy told me." PAPADOPOULOS further stated that Foreign Contact 1 told him that the Russians "have dirt on her," meaning Clinton, and that "they have thousands of emails."

      b.     PAPADOPOULOS, however, claimed to have received this information prior to joining the Campaign. He told the Agents: "This isn't like [Foreign Contact 1 was] messaging me while I'm in April with Trump."

      c.     PAPADOPOULOS stated that he did not tell anyone on the Campaign about the "dirt" on Clinton because he "didn't even know [if] that was real or fake or he was just guessing because I don't know, because the guy [Foreign Contact 1] seems like he's . . . he's a nothing."

      14.     However, upon review of documents and other information obtained in the course of this investigation, including emails obtained through a judicially authorized search warrant, I believe that the statements made by GEORGE PAPADOPOULOS, the defendant, falsely characterized his interactions with Foreign Contact 1, including his representation that Foreign Contact 1 seemed like "a nothing." For example:

      a.     On or about March 24, 2016, which was three days after the Campaign's announcement of its foreign policy advisors, including PAPADOPOULOS, PAPADOPOULOS emailed Campaign officials that he had "just finished a very productive lunch with a good friend of mine, [Foreign Contact 1] . . . – who introduced me to both Putin's niece and the Russian Ambassador in London – who also acts as the Deputy Foreign Minister." PAPADOPOULOS further wrote: "The topic of the lunch was to arrange a meeting between us and the Russian leadership to discuss U.S.-Russia ties under President Trump. They are keen to

5

host us in a 'neutral' city, or directly in Moscow. They said the leadership, including Putin, is ready to meet with us and Mr. Trump should there be interest. Waiting for everyone's thoughts on moving forward with this very important issue." PAPADOPOULOS acknowledged to the FBI that the individual he referred to as "Putin's niece" was a Russian national ("Foreign Contact 3," further described below).

      b.    On or about April 18, 2016, Foreign Contact 1 emailed PAPADOPOULOS, stating that he had a "long conversation in Moscow with my dear friend ["Foreign Contact 2"] . . . about a possible meeting between the two of you. [Foreign Contact 2] is ready to meet with you in London (or USA or Moscow). I am putting the two of you in touch to discuss when and where this potential meeting can actually take place." Foreign Contact 1 copied Foreign Contact 2 on the email to PAPADOPOULOS, who responded by offering to "try and come to Moscow" and setting up a Skype call with Foreign Contact 2 for 3:00 p.m. "Moscow time." In subsequent emails between PAPADOPOULOS and Foreign Contact 2, Foreign Contact 2 represented himself as a Russian national with access to Russian government officials.

      c.    On or about April 22, 2016, Foreign Contact 2 sent PAPADOPOULOS an email thanking him "for an extensive talk!" and proposing "to meet in London or in Moscow." PAPADOPOULOS replied by suggesting that "we set one up here in London with the Ambassador as well to discuss a process moving forward."

      d.    After additional email communications between PAPADOPOULOS and Foreign Contact 2, including setting up conversations over Skype, on or about May 4, 2016, Foreign Contact 2 informed PAPADOPOULOS by email that Foreign Contact 2 had "just talked to my colleagues from the MFA. [They are] open for cooperation.

One of the options is to make a meeting for you at the North America Desk, if you are in Moscow." I know based on public sources and my own training and experience that the MFA is the Russian Ministry of Foreign Affairs, which is the governmental body responsible for Russian foreign relations. PAPADOPOULOS responded to the May 4 email from Foreign Contact 2 that he was "[g]lad the MFA is interested."

e.      Between on or about May 4, 2016 and on or about May 21, 2016, PAPADOPOULOS forwarded the May 4, 2016 email from Foreign Contact 2 described above to three separate individuals who at the time were senior officials with the Campaign. In one of the forwarding emails to one Campaign official, PAPADOPOULOS wrote "Russia updates." In another forwarding email to another Campaign official, PAPADOPOULOS wrote: "Regarding the forwarded message, Russia has been eager to meet Mr. Trump for quite sometime and have been reaching out to me to discuss."

f.      On or about May 8, 2016, Foreign Contact 2 emailed PAPADOPOULOS and Foreign Contact 1 about putting PAPADOPOULOS in touch with the "MFA head of the US desk." Further emails show that over the course of the subsequent weeks, Foreign Contact 2 set up Skype calls with PAPADOPOULOS and discussed, among other things, the fact that Foreign Contact 2 reported a "good reaction from the US desk at the MFA."

g.      On or about July 14, 2016, PAPADOPOULOS emailed Foreign Contact 2 and proposed a "meeting for August or September in the UK (London) with me and my national chairman, and maybe one other foreign policy advisor and you, members of president putin's office and the mfa to hold a day of consultations and to meet one another. It has been approved from our side."

***False Statements by PAPADOPOULOS Regarding Foreign Contact 3***

15.     During the course of his January 27, 2017 interview with the FBI, GEORGE PAPADOPOULOS, the defendant, acknowledged meeting Foreign Contact 3. Foreign Contact 3 represented that she had access and ties to the Russian government. PAPADOPOULOS characterized the extent, timing, and nature of his interactions with Foreign Contact 3 as follows:

a.     In response to questioning by the Agents about Russian contacts, PAPADOPOULOS acknowledged that Foreign Contact 1 had introduced him to Foreign Contact 3. PAPADOPOULOS stated that the introduction took place "a year ago, this was before I even got with-with Trump."

b.     When asked by the Agents to what extent PAPADOPOULOS and Foreign Contact 3 communicated, PAPADOPOULOS responded, "She sent emails" to the effect of "Just, 'Hi, how are you?' That's it."

16.     However, upon review of documents and other information obtained in the course of this investigation, including emails obtained through a judicially authorized search warrant, I believe that the statements made by GEORGE PAPADOPOULOS, the defendant, characterizing the extent of his interactions with Foreign Contact 3 as just email pleasantries and his representation that he met Foreign Contact 3 "a year ago," "before I even got with Trump," were false and misleading.  For example:

a.     As set forth above, on or about March 24, 2016, which was three days after PAPADOPOULOS was publicly named as a foreign policy advisor to the Campaign, PAPADOPOULOS emailed Campaign officials that he had "just finished a very productive lunch with a good friend of mine, [Foreign Contact 1] – who introduced me to . . . Putin's niece [Foreign Contact 3]." ·

8

b.      On or about April 10, 2016, PAPADOPOULOS emailed Foreign Contact 3, re-introducing himself and noting that he was "Donald Trump's advisor." PAPADOPOULOS reminded Foreign Contact 3 that "[w]e met with [Foreign Contact 1] in London. The reason for my message is because [Foreign Contact 1] sent an email that you tried contacting me." PAPADOPOULOS wrote that "it would be a pleasure to meet again. If not, we should have a call and discuss some things." PAPADOPOULOS ended the email with his mobile number and a request for Foreign Contact 3's mobile number.

c.      Foreign Contact 3 replied to PAPADOPOULOS on or about April 11, 2016, and stated that she was "now back in St. Petersburg" but would be "very pleased to support your initiatives between our two countries and of course I would be very pleased to meet you again." PAPADOPOULOS responded, copying Foreign Contact 1, that "I think a good step would be for me to meet with the Russian Ambassador in London sometime this month" and that PAPADOPOULOS would "like to discuss with him, or anyone else you recommend, about a potential foreign policy trip to Russia." Foreign Contact 1 responded: "This is already been agreed. I am flying to Moscow on the 18th for . . . meetings at the Duma." I know based on public sources that the Duma is a Russian government legislative assembly.

d.      On or about the following day, April 12, 2016, Foreign Contact 3 emailed PAPADOPOULOS and stated that "I have already alerted my personal links to our conversation and your request. The Embassy in London is very much aware of this. As mentioned we are all very excited by the possibility of a good relationship with Mr. Trump. The Russian Federation would love to welcome him once his candidature would be officially announced."

9

a.      On or about July 15, 2016, PAPADOPOULOS sent a private Facebook message to a Facebook account identified with Foreign Contact 2, stating: "We can chat on this, this weekend if you can't tonight." Foreign Contact 2 messaged back a Facebook "thumbs up."

b.      On or about July 21, 2016, PAPADOPOULOS sent another private Facebook message to Foreign Contact 2 stating: "How are things [Foreign Contact 2]? Keep an eye on the speech tonight. Should be good."

c.      On or about July 22, 2016, PAPADOPOULOS messaged Foreign Contact 2 on Facebook to ask whether Foreign Contact 2 knew a particular individual with extensive ties to Russian-based businesses and persons. PAPADOPOULOS asked Foreign Contact 2 "[i]f you know any background of him that is noteworthy before I see him, kindly send my way."

d.      On or about October 1, 2016, PAPADOPOULOS sent Foreign Contact 1 a private Facebook message with a link to an article from Interfax.com, a Russian news website. This evidence contradicts PAPADOPOULOS's statement to the Agents when interviewed on or about January 27, 2017, that he had not been "messaging" with Foreign Contact 1 during the campaign while "with Trump."

20.      None of the communications described above was in the new Facebook account created by GEORGE PAPADOPOULOS, the defendant, after he had shut down his existing account upon his February 16, 2017 interview with the FBI.

## Conclusion

21.      Based on the foregoing, I respectfully submit that there is probable cause to believe that GEORGE PAPADOPOULOS, the defendant, violated 18 U.S.C. § 1001 by

11

knowingly and willfully making materially false statements when interviewed on or about

January 27, 2017 by the FBI.  I also respectfully submit that there is probable cause to believe

that PAPADOPOULOS violated 18 U.S.C. § 1519 by altering and concealing a record, to wit,

his Facebook account, with intent to obstruct and impede the FBI's ongoing investigation, and in

relation to, or in contemplation of, that investigation.

      22.    As set forth above, the facts described herein are limited to those

necessary to establish probable cause for a criminal complaint.  The investigation remains

ongoing.

Respectfully Submitted,

_Robert M. Gibbs_

Robert M. Gibbs
Special Agent
Federal Bureau of Investigation

Sworn to before me this 21st day of July, 2017

_Beryl A. Howell_

The Honorable Beryl A. Howell
Chief United States District Judge for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

GEORGE PAPADOPOULOS,

Defendant

Criminal No. 1:17-mj-536

**UNDER SEAL**

### ORDER TO SEAL

The United States, pursuant to Local Rule 49(E)(4) of the Local Criminal Rules for the U.S. District Court for the District of Columbia, having moved to seal the criminal complaint, the affidavit in support of the arrest warrant, the Motion to Seal, and proposed Order in this matter, and

The COURT, having considered the government's submissions, including the facts presented by the government to justify sealing; having found that revealing the material sought to be sealed would jeopardize an ongoing criminal investigation; having considered the available alternatives that are less drastic than sealing; finding none would suffice to protect the government's interest in protecting the integrity of the investigation; and having found that this government interest outweighs at this time any interest in the disclosure of the material; it is hereby



THIS ORDER Sealed Case IN DC.

ORDERED that the United States' motion is GRANTED, and the criminal complaint and all documents associated with it, including the docket in this matter, will be SEALED until further order of the Court.

Date: July 28th, 2017

_____
Hon. Beryl A. Howell
Chief United States District Judge

UNITED STATES DISTRICT COUR
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MAGISTRATE JUDGE: <u>THERESA CARRROLL BUCHANAN</u>

UNITED STATES OF AMERICA

HEARING: ___R5/R40___ CASE #: __17mJ358__

-VS-

DATE: __7/28/17__ TIME: __2:00pm__

TYPE: <u>FTR RECORDER</u>    DEPUTY CLERK: <u>T. FITZGERALD</u>

_George Papadopoulos_

COUNSEL FOR THE UNITED STATES:_____ B. VanGratt _____

COUNSEL FOR THE DEFENDANT:_____ w/o _____

INTERPRETER:_____LANGUAGE:_____

( X ) DEFENDANT APPEARED:  (   ) WITH COUNSEL   ( X ) WITHOUT COUNSEL

( X ) DEFT. INFORMED OF RIGHTS, CHARGES, PENALTIES and/or VIOLATIONS

(   ) COURT TO APPOINT COUNSEL _____  (   ) DFT. TO RETAIN COUNSEL

(   ) GVT. CALL WITNESS & ADDUCES EVIDENCE

(   ) EXHBIT #_____ADMITTED

(   ) PROBABLE CAUSE: FOUND (   ) / NOT FOUND (   )

(   ) PRELIMINARY HEARING WAIVED

(   ) MATTER CONTINUED FOR FURTHER PROCEEDINGS BEFORE THE GRAND JURY

(   ) DEFT. ADMITS VIOLATION (   )DFT. DENIES VIOLATION (   )COURT FINDS DFT. IN VIOLATION

MINUTES:_ Deft. stated that he already has counsel (not present); USA does not seek detention. Deft. released on PR Bond w/conditions.

CONDITIONS OF RELEASE:
($        ) UNSECURED ($        ) SECURED ( X ) PTS (   ) 3RD PARTY ( X ) TRAVEL RESTRICTED
(   ) APPROVED RESIDENCE (   ) SATT (   ) PAY COSTS (   ) ELECTRONIC MONITORING (   ) MENTAL HEALTH
TEST/TREAT (   ) ROL (   ) NOT DRIVE (   ) FIREARM ( X ) PASSPORT ( X ) AVOID CONTACT
(   ) ALCOHOL & DRUG USE (   ) EMPLOYMENT

(   ) DEFENDANT REMANDED TO THE CUSTODY OF THE U.S. MARSHALS
(   ) DEFENDANT CONTINUED ON SAME CONDITIONS OF PROBATION

NEXT COURT APPEARANCE:_____at _____Before_____
(   ) DH (   ) PH (   ) STATUS (   ) TRIAL (   ) JURY (   ) PLEA (   ) SENT (   ) PBV  (   ) SRV  (   ) R5

AO 199A (Rev. 6/97) Order Setting Conditions of Release      Page 1 of 3 Pages


( UNDER SEAL )

# UNITED STATES DISTRICT COURT

_____Eastern_____   District of   _____Virginia_____

United States of America

v.

__George Papadopoulos__
Defendant

### ORDER SETTING CONDITIONS
### OF RELEASE

Case Number: 17mJ536 (D.C. case #)
17mJ358 (EDVA case #)

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)   The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)   The defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number.

(3)   The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) _____United States District Court_____

_____401 Courthouse Sq., Alexandria, VA_____ on _____TBA_____
                                                 Place

                                                    Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✓ ) (4)   The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(    ) (5)   The defendant executes an unsecured bond binding the defendant to pay the United States the sum of

_____ dollars ($_____)
in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL   SERVICES   U.S. ATTORNEY   U.S. MARSHAL

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ ) (6)  The defendant is placed in the custody of:

Person or organization _____

Address *(only if above is an organization)* _____

City and state _____  Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____  _____

Custodian                                          Date

( ☒ ) (7)  The defendant must:

( ☒ ) (a)  report on a regular basis to the following agency:  **Pretrial Services**

( ☐ ) (b)  continue or actively seek employment.

( ☐ ) (c)  continue or start an education program.

( ☒ ) (d)  surrender any passport to:  Already in possession of the government

( ☒ ) (e)  not obtain a passport or other international travel document.

( ☒ ) (f)  abide by the following restrictions on personal association, residence, or travel:  **Do not depart the Washington D.C.** w/o prior permission. **metropolitan area without prior approval of Pretrial Services or the Court.** Also restricted to Northern District of Illinois.

( ☒ ) (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:  to include any individuals organizations or entities listed in the complaint.  (list to be given to deft by USA)

( ☐ ) (h)  get medical or psychiatric treatment: _____

( ☐ ) (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

( ☐ ) (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ☐ ) (k)  not possess a firearm, destructive device, or other weapon.

( ☐ ) (l)  not use alcohol ( ☐ ) at all ( ☐ ) excessively.

( ☐ ) (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ☐ ) (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( ☐ ) (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

( ☐ ) (p)  participate in one of the following location restriction programs and comply with its requirements as directed:

( ☐ ) (i)  **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____, or ( ☐ ) as directed by the pretrial services office or supervising officer; or

( ☐ ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or

( ☐ ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

( ☐ ) (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.

( ☐ ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

( ☐ ) (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( ☒ ) (s)  Deft must appear for court in the District of Columbia when told to do so by the court and/or PTS.

AO 199C (Rev. 09/08) Advice of Penalties

# ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (i.e., in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

Chicago IL                              847-698-6689
_____                        _____
*City and State*                       *Telephone Number*

## Directions to the United States Marshal

( X ) The defendant is ORDERED released after processing.
( ☐ ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the
defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be
produced before the appropriate judge at the time and place specified.

Date: ___1/28/17___

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
_____
*Judicial Officer's Signature*

_____
*Printed name and title*

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Theresa Carroll Buchanan
(judge_buchanan@vaed.uscourts.gov, tcb_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:7357223@vaed.uscourts.gov
Subject:Activity in Case 17-358VAED Sealed v. Sealed (Redacted Notice)
```
Content–Type: text/html

## NOTE: This docket entry (or case) is SEALED. Do not allow it to be seen by unauthorized persons.

### U.S. District Court

### Eastern District of Virginia –

### Notice of Electronic Filing

The following transaction was entered on 7/31/2017 at 10:25 AM EDT and filed on 7/28/2017

| | |
|---|---|
| **Case Name:** | USA v. Papadopoulos |
| **Case Number:** | 1:17–mj–00358–TCB *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**\*\*\*Terminated defendant George Papadopoulos, pending deadlines, and motions. (tfitz, )**

**No public notice (electronic or otherwise) sent because the entry is private**