IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 17-182(RDM) |
| v. | **Filed Under Seal** |
| GEORGE PAPADOPOULOS, | |
| Defendant. | |

**FILED**

OCT 0 3 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## GOVERNMENT'S MOTION TO SEAL DEFENDANT'S PLEA AGREEMENT, TO CLOSE THE COURTROOM FOR PLEA HEARING, AND FOR LEAVE TO FILE THE PRESENT MOTION UNDER SEAL

Pursuant to Local Criminal Rule 49(e) and (f)(6), the United States moves the Court to seal the plea agreement; to close the courtroom for the plea hearing scheduled on October 5, 2017; and to grant the government leave to file this motion and attached exhibits under seal. As explained below, sealing the plea agreement and closing the courtroom for the plea hearing are necessary to further the government's compelling interest in preserving the integrity of an ongoing investigation, and no less drastic alternatives sufficient to protect that interest are available. The requested relief is especially appropriate because sealing will be necessary only for the limited duration required to complete certain investigatory steps.

## BACKGROUND

1. Defendant Papadopoulos (defendant) served as a foreign policy advisor for the presidential campaign of Donald J. Trump beginning in early March 2016, and continuing through most of that campaign. On July 27, 2017, the defendant was arrested when he landed at Washington Dulles International Airport on a flight from Munich, Germany. The next day, he was charged in a criminal complaint in this Court with making false statements to agents of the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001; and altering or concealing records, in

violation of 18 U.S.C. § 1519.   The charges are based on actions that the defendant took during and after law enforcement agents interviewed him as part of an investigation into the Russian government's efforts to interfere in the 2016 presidential election.

2.     On the morning of July 28, 2017, the Court granted an oral motion to seal the criminal complaint and accompanying documents.  Later that day, the Court entered an additional order sealing "the criminal complaint and all documents associated with it, including the docket in this matter, . . . until further order of the Court."  July 28 Order at 2.  In so ordering, the Court found that public disclosure "would jeopardize an ongoing criminal investigation," that no alternative less drastic than sealing "would suffice to protect the government's interest in protecting the integrity of the investigation," and that the "government's interest outweigh[ed] . . . any interest in the disclosure of the material" at that time.  *Id.* at 1-2.

3.     On August 3, 2017, the Court entered an order excluding time under the Speedy Trial Act, based in part on plea negotiations between the parties.  Aug. 3, 2017 Order.  Before and since the date of that order, the parties have engaged in discussions about a disposition, and the defendant has met with the government on numerous occasions to provide information and answer questions relevant to the ongoing investigation.  Those discussions have culminated in a proposed plea agreement, under which the defendant will plead guilty to an Information charging him with making false statements to federal agents, in violation of 18 U.S.C. § 1001(a).  The government expects that the agreement will incorporate a Statement of the Offense setting forth the factual basis for the guilty plea.  That Statement explains that the charge and accompanying plea are based on the defendant's false statements to the FBI about the extent, timing, and nature of communications he had during the campaign with, among others, Russian nationals and Russia-

connected foreign nationals whom he understood to have close connections with senior Russian government officials. A plea hearing is currently scheduled for October 5, 2017, at 2:00 p.m.

4.      The defendant's guilty plea (if accepted) will result in the first criminal conviction arising from the Special Counsel's investigation into Russian interference in the 2016 presidential election. The investigation is ongoing and includes pursuing leads from information provided by and related to the defendant regarding communications he had with certain other individuals associated with the campaign. As relevant here, the government will very shortly seek, among other investigative steps, to interview certain individuals who may have knowledge of contacts between Russian nationals (or Russia-connected foreign nationals) and the campaign, including the contacts between the defendant and foreign nationals set forth in the Statement of Offense.

5.      The government recognizes that its investigation is the focus of intense public interest. As explained in Special Agent Edwards's Declaration (attached as Exhibit A), however, public disclosure of the defendant's guilty plea at this time could significantly compromise the government's ability to carry out the planned interviews described above and the investigative steps that may precede or follow them. Exh. A ¶¶ 5-6. In particular, disclosure of the defendant's plea could likely discourage persons of interest, including individuals associated with the campaign, from speaking with investigators about their interactions with the defendant and related matters, or cause individuals to shape their statements in light of their knowledge of the defendant's plea. *Id.* ¶¶ 5-6. Because individuals who become aware of the Special Counsel's focus on events related to the defendant's plea may well be dissuaded from providing information, the investigation would be irreparably jeopardized by disclosure of the defendant's plea. Id. ¶ 6. The government will seek to conduct those interviews and investigative steps expeditiously in order to minimize the time necessary to keep the defendant's plea under seal.

3

# ARGUMENT

## THE CIRCUMSTANCES JUSTIFY A LIMITED-DURATION SEALING ORDER AND CLOSING OF THE COURTROOM FOR THE DEFENDANT'S PLEA PROCEEDINGS

### A.   Plea Proceedings May be Sealed Upon A Sufficient Justification

"The [F]irst [A]mendment guarantees the press and the public a general right of access to court proceedings and court documents." *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991). In *Robinson*, the D.C. Circuit held that "this right of access . . . extends to plea agreements," *id.*, and cited with approval decisions that had applied the right of access to "plea hearings" themselves, *see United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988); *see also In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986).[1]

The right of access established in *Robinson*, however, is not absolute. Rather, the "general presumption of access to plea agreements" can be overcome upon a showing that sealing the agreement serves a compelling government interest, that a substantial probability exists that the interest would be harmed absent sealing, and that "no adequate alternatives to closure . . . would adequately protect the compelling interest." 935 F.2d at 290 (internal quotation marks omitted). The court in *Robinson* also recognized that "it may well be sufficient to justify sealing a plea agreement" that releasing the "agreement may threaten an ongoing criminal investigation" or the safety of a cooperating "defendant and his family." *Id.* at 291.

---

[1] In criminal cases, a "public trial right" also exists under the Sixth Amendment. *Presley v. Georgia*, 558 U.S. 209, 211-12 (2010) (per curiam). The Supreme Court has not decided whether that right extends to guilty-plea hearings or is "coextensive" with the First Amendment right recognized in decisions such as *Robinson, see id.* at 213. But the Court has made clear that the Sixth Amendment right belongs to "the accused," 558 U.S. at 212, and the defendant here informs the government that he has no objection to—and in fact supports—closing the courtroom for the plea hearing. This motion therefore raises no separate Sixth Amendment question.

Similar principles govern closure of the courtroom during a guilty plea hearing. Specifically, courtroom closure is permissible when it is necessary to protect a compelling interest of either the government or the defendant and is narrowly tailored to serve that interest. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986); *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995). A closure order must be supported by findings demonstrating a "substantial probability" that the government interest at issue will be protected by sealing the courtroom and that "reasonable alternatives to closure cannot adequately protect" that interest. *Press-Enterprise Co.*, 478 U.S. at 14.

**B.     The Circumstances Here Justify Sealing The Plea Agreement And Plea Proceedings For The Limited Period Necessary To Complete Investigatory Steps**

Under the above standards, sealing of the plea agreement and closure of the courtroom for the plea hearing are warranted in this case.

1.      Sealing is sought here to maintain the integrity and confidentiality of an ongoing investigation, a governmental interest that courts have consistently recognized to be compelling. *See Robinson*, 935 F.2d at 291; *accord United States v. Doe*, No. 15-50259, 2017 WL 3996799, at *5-*7 (9th Cir. Sept. 12, 2017) (identifying the avoidance of risks to "ongoing investigations" as a compelling interest that may justify sealing); *Haller*, 837 F.2d at 88 (same). The investigation at issue concerns a matter of utmost importance and sensitivity—efforts by a foreign government to interfere in the 2016 presidential election—and as such has garnered intense media attention. Some of that attention has focused on the defendant himself, including three news reports released in the weeks after the July 28, 2017, filing of the sealed criminal complaint.[2]

---

[2] *See, e.g.*, Tom Hamburger, et al., *Trump campaign emails show aide's repeated efforts to set up Russia meetings*, Washington Post (Aug. 14, 2017), available at https://www.washingtonpost.com/politics/trump-campaign-emails-show-aides-repeated-efforts-

2.      Absent sealing for a limited period, a substantial probability exists that public knowledge of the defendant's guilty plea will compromise the ongoing investigation. *See Robinson*, 935 F.2d at 290. Any revelation that the defendant—a known foreign policy advisor to the President's 2016 campaign who has been the subject of recent media reports—has pleaded guilty to a criminal offense stemming from the investigation would result in immediate and widespread publicity.  And as Special Agent Edwards explains in her Declaration, such publicity is likely to discourage campaign-related individuals who had relevant contact with the defendant from cooperating with investigators at all, either  because of the prospect of criminal exposure or because they fear becoming the subject of renewed media coverage themselves.  Exh. A. ¶¶ 5-6; *cf. Robinson*, 935 F.2d at 291 (recognizing that fear of publicity may discourage cooperation but finding no such evidence on the facts there); *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 930 (D.C. Cir. 2003) (explaining, in the context of a national security investigation, that "[a] potential witness or informant may be much less likely to come forward and cooperate with the investigation if he believes his name will be made public").  That is especially likely to be true for individuals who, like the defendant, worked for or were associated with the campaign. Although the government is moving expeditiously to interview individuals of immediate interest to the investigation, news that the defendant has been charged with and pleaded guilty to lying to federal agents may make those individuals reluctant to speak with investigators.

---

to-set-up-russia-meetings/2017/08/14/54d08da6-7dc2-11e7-83c7-5bd5460f0d7e_story.html? utm_term=.f0b8a723f857; Max Kutner, *Who is George Papadopoulos, the Trump campaign adviser who suggested a meeting with Russian leaders?*, Newsweek (Aug. 15, 2017), available at: http://www.newsweek.com/who-george-papadopoulos-trump-adviser-russia-650716;      Chuck Ross, *Why was this Trump campaign adviser trying to set up meetings with Russians?*, The Daily Caller (Aug. 16, 2017), available at: http://dailycaller.com/2017/08/16/why-was-this-trump-campaign-adviser-trying-to-set-up-meetings-with-russians/.

In that regard, the threat to the ongoing investigation here differs markedly from the circumstances in *Robinson*, where the D.C. Circuit found that disclosure of a plea agreement posed no such threat. 935 F.2d at 291-292. The information that the government sought to protect in *Robinson* was that the defendant had agreed to cooperate in an ongoing investigation into the drug-related activities of then-D.C. Mayor Marion Barry. But the defendant's cooperation had been widely publicized by the time of his guilty plea, including in newspaper articles that reported that he would "'cooperate' with the government regarding the Barry investigation" and that the government had discussed his cooperation at "a news conference." *Id.* The D.C. Circuit concluded that disclosure of the plea agreement's contents "could hardly have posed any additional threat to the ongoing criminal investigation," because it "would only have confirmed the public what was already validated by an official source." *Id.* at 292.

In this case, by contrast, the government seeks to protect sensitive information that has never reached the public domain. Indeed, this Court sealed the complaint and docket to ensure that such public disclosure did not occur. The Court's sealing order was based in part on the possibility that the defendant would cooperate in the investigation, and in part because public disclosure could prevent investigators from obtaining otherwise available evidence. Gov't July 28, 2017 Mot. ¶ 3. That concern continues to be of vital importance, because revealing the defendant's plea would likely chill individuals to be interviewed in coming weeks from speaking with investigators or cause them to shape any statements they do give based on their knowledge of the defendant's plea. *See* Exh. A ¶¶ 5-6.

The foregoing reasons justify not only the sealing of the plea agreement but also the closure of the courtroom for the entirety of the plea hearing. The hearing will necessarily reveal sensitive information about the investigation because the Federal Rules of Criminal Procedure require the

Court "to determine," among other things, "that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3).   As a result, the government must proffer to the Court "evidence from which a reasonable juror could conclude that the defendant [i]s guilty as charged." *United States v. Ahn*, 231 F.3d 26, 31 (D.C. Cir. 2000) (internal quotation marks and citation omitted).   Recitation of that evidence at the hearing would therefore cause the same harm as publishing the Statement of Offense—that is, disclosure of one campaign official's Russia-related contacts before the government can interview other relevant campaign officials.

   3.   No adequate alternatives to the requested sealing would suffice to protect the government interest at stake. *See Robinson*, 935 F.2d at 290.  The government has considered, for example, the possibility of sealing only the Statement of Offense recounting the facts that form the basis for the defendant's plea, as distinguished from the plea agreement itself.  While partial sealing of that sort may suffice in some cases, *see, e.g.*, *Haller*, 837 F.2d at 87-88 (sealing one paragraph of plea agreement), that measure would not adequately protect the ongoing investigation here.  The plea agreement alone still reveals the defendant as the individual pleading guilty and the charge to which he is pleading, and it identifies the prosecutors as lawyers in the Special Counsel's Office, whose investigation is being closely followed by the media.  Disclosure of the plea agreement, even with redactions, would therefore trigger the type of widespread publicity that will, in the experience of investigators, discourage individuals from cooperating. *See* Exh. A ¶¶ 5-6.  Similarly, closing the courtroom only during presentation of the factual basis for the plea, or airing the relevant facts in chambers, *cf. United States v. Alcantara*, 396 F.3d 189, 191 (2d Cir. 2005) (reversing guilty plea taken in robing room), would not adequately protect the government interests at stake.

4.    Finally, the requested sealing of the plea agreement is especially appropriate because it will be of limited duration.  The government is working expeditiously to complete the investigative steps that would be most directly jeopardized by public disclosure of the defendant's guilty plea proceedings.  Once those steps are completed, the government will promptly return to the Court and move for public disclosure of the sealed plea agreement, as well as a transcript of the closed plea hearing.  If the investigative steps are not completed within 30 days from the date of an order granting this motion, the government will at that time (or any earlier time required by the Court) submit a status report to explain any continued need for sealing.

## C.    The Procedural Steps Necessary To Permit Sealing Can Be Satisfied

Before sealing a plea agreement, a court must follow certain procedural steps.  *Robinson*, 935 F.2d at 289.  Specifically, *Robinson* requires that: (1) the government file a written motion to seal, notice of which is entered in the public docket; (2) the Court promptly allow interested persons to be heard before ruling on that motion and entering a sealing order; (3) the Court articulate specific findings on the record demonstrating that the decision to seal is narrowly tailored and essential to preserving a compelling government interest; and (4) the Court place the fact that it has sealed the plea agreement on the docket and "make every effort to explain as much of its decision as possible on the public record to enable an interested person intelligently to challenge the decision." *Id.* at 289 & n.9.  The court in *Robinson* further noted that, while notice of the government's motion to seal must be entered on the docket, "[t]he government may seek leave of the court to file under seal its written motion to seal along with the plea agreement itself, and any supporting documents, pending the disposition of the motion." *Id.*; *see also United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).

In order to comply with these procedures, the Court should promptly cause notice of the government's motion to seal to be entered on the public docket (even though the motion itself would remain sealed, *see Robinson*, 935 F.2d at 289). *Robinson* addressed a situation in which the criminal case had a public docket that interested members of the public could consult. If the Court seals the docket created upon filing of the Information (as the government has requested), then no comparable public docket will exist in this case.[3] To ensure compliance with *Robinson*, the Court should create a public docket that protects the integrity of the investigation—for example, by bearing the pseudonymous case name "*United States v. Doe*"—on which to enter notice of the government's motion to seal the plea agreement. *Robinson*, 935 F.2d at 289. The government does not understand *Robinson* to require that the docket name the Special Counsel's Office (or its attorneys) as the prosecuting authority, and such information would increase the risk that the investigation will be compromised before the Court has had a chance to rule on the government's motion to seal. Accordingly, the government requests that any public docket entry exclude additional information concerning the case or counsel at this time.[4]

For the foregoing reasons, the government respectfully requests that the Court grant its motion and, after entry of this motion on the public docket to provide notice to interested parties, order that the plea agreement be sealed, that the courtroom be closed for the plea hearing of

---

[3] To this point, no public docket has existed, because the Court sealed the case at the time that the criminal complaint was filed. *See* July 28 Order in 1:17-mj-536. When the government entered into the Court's public CM/ECF system that case number, the system returned a case title of "[SEALED] v. [SEALED]" and provided no further docket information.

[4] Although *Robinson* did not indicate how long the opportunity to intervene must be afforded before the Court rules, the government suggests that it permit a two-day period—that is, until the day of the scheduled plea hearing—before ruling on this motion.

October 5, 2017, and that the government be granted leave to file this motion and the attached

exhibits under seal.  A proposed order accompanies this motion.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: _10/3/2017_                    By:  _____
                                          Jeannie S. Rhee
                                          Andrew D. Goldstein
                                          Aaron S.J. Zelinsky
                                          The Special Counsel's Office