**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> GEORGE PAPADOPOULOS, <br><br> Defendant. | Criminal No. 17-cr-182-RDM |

**MEMORANDUM OF LAW IN SUPPORT OF GEORGE PAPADOPOULOS'S MOTION TO CONTINUE BAIL PENDING OUTCOME OF APPEAL IN *IN RE: GRAND JURY INVESTIGATION*, NO. 18-3052 (D.C. Cir. Aug. 14, 2018)**

Michael P. Hatley
DC Bar # 1027701
Pierce Bainbridge Beck Price & Hecht LLP
One Thomas Circle, NW, Suite 700
Washington, DC 20005
(213) 262-9333, ext. 222
mhatley@piercebainbridge.com

John M. Pierce (*PHV* Pending)
Pierce Bainbridge Beck Price & Hecht LLP
600 Wilshire Boulevard, Suite 500
Los Angeles, CA 90017
(213) 262-9333
jpierce@piercebainbridge.com

Christopher N. LaVigne (*PHV* Pending)
Caroline J. Polisi (*PHV* Pending)
Pierce Bainbridge Beck Price & Hecht LLP
20 West 23rd Street, 5th Floor
New York, NY 10010
(212) 484-9866
clavigne@piercebainbridge.com
cpolisi@piercebainbrige.com

*Attorneys for Defendant George Papadopoulos*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.      Questions Raised by the Appeal are Substantial Questions of Law or Fact .. 2

            A.      The Special Counsel is a Principal Officer and His Appointment Could be Effected Only With Advice and Consent of the Senate ..... 3

            B.      The Attorney General Has No Statutory Authority to Appoint the Special Counsel .................................................................................. 5

            C.      The Special Counsel Was Not Appointed by the "Head of Department" ........................................................................................ 7

    II.     Conviction Is Likely to Be Reversed if the Appeal Is Granted ...................... 9

    III.    Mr. Papadopoulos Risks Severe and Unnecessary Hardship If His Bail Is Not Continued ........................................................................................ 10

CONCLUSION .............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Ashbourne v. Hansberry,*
  302 F. Supp. 3d 338 (D.D.C. 2018) .................................................................................. 2

*Edmond v. United States*,
  520 U.S. 651 (1997) .......................................................................................................... 4

*Hisler v. Gallaudet Univ.*,
  344 F.Supp.2d 29 (D.D.C. 2004) ..................................................................................... 2

*In re Grand Jury Investigation*,
  315 F. Supp. 3d 602 (D.D.C. 2018), *appeal filed*, No. 18-3052 (D.C. Cir. Aug. 14,
  2018) .............................................................................................................................. 5, 7

*In re Sealed Case*,
  829 F.2d 50 (D.C. Cir. 1987) ........................................................................................... 7

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
  684 F.3d 1332 (D.C. Cir. 2012) ....................................................................................... 4

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .......................................................................................................... 2

*Moog Inc. v. United States*,
  No. MISC. CIV-90-215E, 1991 WL 46518 (W.D.N.Y. Apr. 1, 1991),
  *reconsideration denied*, No. MISC. CIV-90-215E, 1991 WL 255371
  (W.D.N.Y. Nov. 21, 1991) ................................................................................................ 9

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C. 2018) .................................................................................. 5

*Seretse-Khama v. Ashcroft*,
  215 F. Supp. 2d 37 (D.D.C. 2002) ................................................................................. 11

*United States v. Concord Mgmt. & Consulting LLC*,
  317 F. Supp. 3d 598 (D.D.C. 2018), *appeal dismissed*, 2018 WL 5115521
  (D.C. Cir. Sept. 17, 2018) ................................................................................................. 7

*United States v. House*,
  No. 14-CR-00329-SI-1, 2016 WL 4154847 (N.D. Cal. Aug. 5, 2016) .......................... 2

*United States v. Nixon*,
  418 U.S. 683 (1974) .......................................................................................................... 7

*United States v. Papadopoulos*,
  No. 1:17-cr-00182-RDM (D.D.C. filed July 28, 2017) .................................................. 1

*United States v. Quinn*,
  416 F. Supp. 2d 133 (D.D.C. 2006) ............................................................................ 2, 3

**Statutes**

18 U.S.C. § 1001 ................................................................................................................ 1

18 U.S.C. § 3143 ................................................................................................................ 2

28 C.F.R. § 0.182 ............................................................................................................. 10

28 C.F.R. § 600.6 ............................................................................................................... 5

28 C.F.R. § 600.7 ............................................................................................................... 4

28 U.S.C. § 2255 ............................................................................................................. 10

28 U.S.C. § 508 ............................................................................................................. 8, 9

28 U.S.C. § 510 ................................................................................................................. 9

28 U.S.C. § 515 ............................................................................................................. 6, 7

28 U.S.C. § 533 ............................................................................................................. 6, 7

5 U.S.C. § 3345 ............................................................................................................. 8, 9

**Federal Rules**

Fed. R. Civ. P. 60(b) ....................................................................................................... 10

**Other Authorities**

Jennifer Mascott, *Who Are "Officers of the United States"?*,
  70 STAN. L. REV. 443 (2018) ...................................................................................... 10

On behalf of George Papadopoulos, we respectfully submit this motion to continue bail pending the decision of the United States Court of Appeals for the District of Columbia Circuit in *In re: Grand Jury Investigation*, No. 18-3052.  Oral argument was heard in that case on November 8, 2018.

## PRELIMINARY STATEMENT

On October 5, 2017, George Papadopoulos pleaded guilty to a one-count Information charging him with making false statements to the FBI in violation of 18 U.S.C. § 1001(a)(2). *United States v. Papadopoulos*, No. 1:17-cr-00182-RDM, Doc. No. 23[1] (Plea Hearing Transcript).  The Court sentenced Mr. Papadopoulos to 14 days incarceration, 12 months of supervised release, and 200 hours of community service, and assessed a fine of $9,500.  Doc. No. 50 (Judgment).  He is due to begin his term of incarceration on November 26, 2018.

However, the D.C. Circuit's decision in the pending appeal in *In re: Grand Jury Investigation* may directly impact the validity of Mr. Papadopoulos's prosecution and conviction. The appeal challenges the constitutionality of the appointment of Special Counsel Robert S. Mueller III (the "Special Counsel").  If the appeal is successful, then the Special Counsel lacked constitutional authority to prosecute Mr. Papadopoulos in the first instance.  Given that the appeal in *In Re Grand Jury Investigation* has been fully briefed and argued, a modest stay of his incarceration pending the outcome of that appeal should be granted.

All of the prerequisites for release pending appeal are satisfied here.  *First*, the record establishes by clear and convincing evidence that Mr. Papadopoulos does not pose a risk of flight or a danger to the community.  Mr. Papadopoulos has fully complied with all of the conditions of his release, and has appeared faithfully for every court appearance and for several interviews

---

[1] References herein to "Doc. No. __" refer to the numbered documents docketed in *United States v. Papadopoulos*, No. 1:17-cr-00182-RDM (D.D.C. filed July 28, 2017).

1

with the government. *Second*, this motion is not being brought for the purpose of delay, and the appeal in *In re Grand Jury Investigation* "raises a substantial question of law or fact" in that it presents "a 'close' question or one that very well could be decided the other way." *Quinn*, 302 F. Supp. 3d at 136. *Third*, a favorable ruling from the Circuit Court would result in a reversal of his conviction. Accordingly, continued release of Mr. Papadopoulos pending resolution of the appeal is warranted. *See United States v. Quinn*, 416 F. Supp. 2d 133, 135 (D.D.C. 2006) (citing 18 U.S.C. § 3143(b)(1)).[2]

## ARGUMENT

I. **Questions Raised by the Appeal are Substantial Questions of Law or Fact**

The appeal in *In re: Grand Jury Investigation* raises three primary questions:

(1) whether the Special Counsel, "because of his extraordinary powers as a prosecutor, coupled with the lack of supervision and control over this conduct," was required to

---

[2] We recognize that the language of the Bail Reform Act contemplates a motion for release pending an appeal brought by the defendant. *See* 18 U.S.C. § 3143(b). Here, of course, Mr. Papadopoulos waived his right to appeal. *See* Doc. No. 18 ¶ 9(D). Nevertheless, a ruling by the D.C. Circuit that the appointment of the Special Counsel was unconstitutional would nullify and void Mr. Papadopoulos's conviction. In light of the advanced stage of the appeal in *In re Grand Jury Investigation*, Mr. Papadopoulos faces the prospect of unnecessarily serving a sentence of incarceration for a conviction that may in the near future be reversed. If the Court determines that the Bail Reform Act does not permit a motion for bail pending appeal under these circumstances, then the Court should consider Mr. Papadopoulos's motion for a stay of execution of his sentence as an application for injunctive relief, which this Court has broad discretionary authority to consider and grant. Indeed, "[a] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *Hisler v. Gallaudet Univ.*, 344 F.Supp.2d 29, 35 (D.D.C. 2004) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) ("[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."). The burden rests with the movant, who "must make out a clear case of hardship or inequity in being required to go forward." *Id.* (quoting *Landis*, 299 U.S. at 255). For the reasons set forth in this memorandum of law, and because Mr. Papadopoulos's liberty is at issue here, we believe that burden has also been met. *See Ashbourne v. Hansberry,* 302 F. Supp. 3d 338, 350-51 (D.D.C. 2018) (granting stay of all proceedings in action pending the outcome of an appeal before the D.C. Circuit in a different case and finding movant had made out a "clear case of hardship or inequity in being required to go forward" when, if forced to proceed, the movant would have been barred from bringing certain federal claims in the future); *see also, e.g.*, *United States v. House*, No. 14-CR-00329-SI-1, 2016 WL 4154847, at *3 (N.D. Cal. Aug. 5, 2016) (staying forfeiture proceeding, pursuant to defendant's guilty plea, until the allegations against defendants in a separate criminal action were adjudicated, and finding the stay was "in the interest of justice and judicial efficiency" where if the defendants were "found not guilty in the related case, such a finding would necessarily also mean that . . . the subject property could not be forfeited").

be appointed by the President and confirmed by the Senate under the Appointments Clause of Article II;

(2) whether, absent Senate confirmation, Congress has passed a law authorizing the appointment of Special Counsel; and

(3) whether, even if the Special Counsel's appointment was authorized by statute, the "Excepting Clause" required that he be appointed by the Attorney General Jeff Sessions instead of Deputy Attorney General Rod Rosenstein.

*See In re: Grand Jury Investigation*, No. 18-3052, Doc. No. 1750086 (D.C. Cir. Sept. 12, 2018) (*hereinafter* "Appellant's Brief"), at 1-8.

These questions all turn on whether the Special Counsel is considered a "principal officer" or an "inferior officer" under the Appointments Clause. If he is a principal officer, his appointment could be effected only through nomination by the President and consent by the Senate. If the Special Counsel is considered an inferior officer, he may be appointed under a law passed by Congress authorizing the President, the Courts, or the "Heads of Departments" to appoint such inferior officers. *Id.*

**A. The Special Counsel is a Principal Officer and His Appointment Could be Effected Only With Advice and Consent of the Senate**

The appeal raises a substantial question as to whether the Special Counsel is a principal officer appointed without the advice and consent of the Senate in violation of the Appointments Clause of Article II, § 2 of the United States Constitution. The Special Counsel fits the definition of a "principal officer" that may be appointed only after Senate confirmation. In distinguishing between principal and inferior officers, the Supreme Court has pointed to three characteristics of an inferior officer: whether "(1) [the officer is] subject to the substantial supervision and oversight" of a principal officer, or an inferior officer who reports to a principal

3

officer; (2) the officer was "removable . . . without cause"; and (3) the officer had "no power to render a final decision on behalf of the United States unless permitted to do so by other Executive Officers." *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1338 (D.C. Cir. 2012) (citing *Edmond v. United States*, 520 U.S. 651, 664-64 (1997)). The Special Counsel is a principal officer, not an inferior officer, under this test.

First, the Special Counsel is not "subject to substantial supervision and oversight." Indeed, the Special Counsel is specifically not "subject to the day-to-day supervision of any official of the Department." 28 C.F.R. § 600.7(b). The applicable regulations purport to confer upon the Special Counsel broad discretion to conduct his investigation, while the Attorney General has little, if any, authority to supervise him. In fact, the Attorney General may only intervene if the Special Counsel acts in a manner so inappropriate "under established Departmental practices that it should not be pursued." Even then, the Attorney General must give "great weight to the views of the Special Counsel." *Id.*

Second, the Special Counsel has the power to render a final decision on behalf of the United States. *Id.* § 600.6. The regulations nowhere require the Special Counsel to seek approval or get permission from the Attorney General before making final decisions about investigations, indictments, and prosecutions. Third, the Special Counsel is not removable without cause. 28 C.F.R. § 600.7(c)-(d) (stating the Special Counsel may be removed by the Attorney General only for serious violations such as acting unethically or subject to a conflict of interest, or in the event of incapacity).

Under consideration by the Circuit Court of Appeals is a district court decision holding that because the "Attorney General could rescind the regulations immediately," the Special Counsel is effectively removable at will, and is therefore an inferior officer. *In re Grand Jury*

*Investigation*, 315 F. Supp. 3d 602, 629 (D.D.C. 2018), *appeal filed*, No. 18-3052 (D.C. Cir. Aug. 14, 2018). In reality, however, the theoretical possibility of "immediately" revoking these regulations in order to fire the Special Counsel at will is illusory. First, that these regulations may be revoked says nothing of how they presently operate, and the powers they currently give to the Special Counsel. Second, and more to the point, if the Attorney General attempted to revoke these regulations, the revocation would not be immediate, but would instead be litigated, and any revocation of the Special Counsel's powers would be stayed pending resolution of that litigation. *See NAACP v. Trump*, 298 F. Supp. 3d 209, 215-16 (D.D.C. 2018) ("The Court further concludes that, under the APA, DACA's rescission was arbitrary and capricious because the Department failed adequately to explain its conclusion that the program was unlawful.").

For these reasons, there is a substantial question as to whether the Special Counsel is a principal officer under *Edmond* and, accordingly, whether his appointment can be effected only through nomination by the President and consent by the Senate, as required by the Appointments Clause of Article II, § 2 of the United States Constitution.

**B.  The Attorney General Has No Statutory Authority to Appoint the Special Counsel**

Even if the D.C. Circuit concludes the Special Counsel is an inferior officer, the constitutionality of his appointment still raises a substantial question of law. For an inferior officer to be appointed by a Head of Department under the Appointments Clause, Congress must have vested that appointment power in a Head of Department, and Congress has not done so here.

The district court in *In re: Grand Jury Investigation* concluded that two statutes provide for the appointment of a Special Counsel: 28 U.S.C. § 533(1) and 28 U.S.C. § 515(b). But the statutes, either independently or in combination, provide no such authority. *See* Appellant's Br.

at 9-14. Section 533(1) authorizes the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States[.]" However, the Section 533's title – "Investigative and other law enforcement officials" – and "Section 533's placement suggests interpreting the provision within the narrower context of its surrounding provisions governing the FBI and its investigations, not as a broad grant of authority for the Attorney General to appoint inferior officers generally and a Special Counsel in particular." *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 620 (D.D.C. 2018), *appeal dismissed*, 2018 WL 5115521 (D.C. Cir. Sept. 17, 2018). Therefore, this provision does not appear to provide authority for Robert S. Mueller's appointment as Special Counsel.

> Section 515(b) provides:
>
> Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney.

This section does not grant new power to retain or hire new inferior officers, but, rather, provides for a title and salary for attorneys who have already been hired. *Concord*, 317 F. Supp. 3d at 621 ("Section 515 thus refers either to attorneys who were already appointed or retained in the past, or it refers to attorneys who are presently appointed or retained.").

Furthermore, while the district court in *In re: Grand Jury Investigation* cited *United States v. Nixon*, 418 U.S. 683 (1974) and *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) to support its holding that Sections 515 and 533 provide the requisite authority for the Attorney General to appoint the Special Counsel, the district court's reliance on these cases is tenuous at best. *Nixon* cited Section 533, among other statutes, in dicta to support the general concept that the Attorney General had "the power to appoint *subordinate* officers to assist him in the

discharge of his duties." *Nixon*, 418 U.S. at 694 (emphasis added). Moreover, "no party in Nixon had disputed that Congress had authorized the Attorney General to appoint the Watergate Special Prosecutor." *In re Grand Jury Investigation*, 315 F. Supp. 3d at 652. Similarly, the court in *In re Sealed Case* cited Section 515 along with other statutes to conclude the appointment of an attorney already employed within the Department of Justice – not the appointment of a private attorney, as is the case with Special Counsel Mueller – as Independent Counsel to investigate the Intra/Contra affair was appropriate. *In re Sealed Case*, 829 F.2d at 55 ("[T]hese provisions do not explicitly authorize the Attorney General to create an Office of Independent Counsel virtually free of ongoing supervision.").

For these reasons, at a minimum, there is a "close question" as to whether these statutes provide the Department of Justice the power to appoint Special Counsel in lieu of Senate confirmation.

**C. The Special Counsel Was Not Appointed by the "Head of Department"**

Even assuming, *arguendo*, that the Special Counsel is an inferior officer and the Attorney General has statutory authority to appoint him, the appeal in *In Re Grand Jury Investigation* still raises a substantial question as to whether the Special Counsel's appointment is unconstitutional. The Appointments Clause provides that Congress may vest appointment power in "the President alone, in the courts of law, or in the heads of departments." The Head of Department relevant to this case is the Attorney General. However, the Special Counsel was not appointed by the Attorney General, but instead by Rod Rosenstein, the Deputy Attorney General.

Under 28 U.S.C. § 508, when the office of the Attorney General is vacant, or the Attorney General is absent or disabled, "the Deputy Attorney General may exercise all the duties of [the Attorney General], and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General." However, there was no vacancy here. The

7

Deputy Attorney General's ability to exercise the duties of the Attorney General does not confer upon the Deputy Attorney General an "Acting" officer status. In other words, according to the plain text of Section 508, the Deputy Attorney General is still the Deputy, and for the purposes of the Appointments Clause the Attorney General remains the Head of Department. Moreover, 5 U.S.C. § 3345, which is referenced in the second part of Section 508, provides in pertinent part that an "Acting Officer" is "first assistant to that office if the holder dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a)(1).

For reasons set forth in detail in the Appellant's Brief, there are substantial questions as to whether any of these circumstances applied to Attorney General Sessions's status when the Special Counsel appointment was made. *See* Appellant's Br. at 32-41. There appears to be no case law supporting the idea that Attorney General Sessions's single-issue recusal from the investigation for which Special Counsel was appointed meant he was vacant, absent, or disabled under Sections 508 and 3345. Indeed, the authorities relied on by the district court in *In Re: Grand Jury Investigation* all appear to support that only a wholesale absence or disability – such as recently occurred when Attorney General Sessions resigned – not a recusal to act on a single issue, is necessary in order for an Acting Attorney General to become the Head of Office. *See Moog Inc. v. United States*, No. MISC. CIV-90-215E, 1991 WL 46518, at *2 (W.D.N.Y. Apr. 1, 1991), *reconsideration denied*, No. MISC. CIV-90-215E, 1991 WL 255371 (W.D.N.Y. Nov. 21, 1991) ("The next link in the government's argument—that the Attorney General's recusal renders him disabled under 28 U.S.C. § 508(a)—is equally problematic. It is readily apparent that [Section 508] contemplates a *complete* inability of the Attorney General to perform his duties, such that the Deputy Attorney General must step in and exercise 'all the duties of that office.' Were the statute construed as the respondent urges, every conflict of interest on the part

of an Attorney General would require his deputy to assume all the duties of office, clearly a nonsensical result.").

Similarly unavailing is 28 U.S.C. § 510, which provides:

> The Attorney General may from time to time make such provision as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

As the Office of Legal Counsel has explained, it is a "difficult and unresolved constitutional question whether Congress could ever authorize the delegation of final appointment authority to an officer not listed as an appointment authority in Article II." Jennifer Mascott, *Who Are "Officers of the United States"?*, 70 STAN. L. REV. 443, 555 n.677 (2018).  Here, Attorney General Sessions did not even attempt to delegate any of his powers under Section 510 to the Deputy Attorney General.  Justice Department regulations would have required him to issue a numbered Order to that effect, which would be first reviewed and approved by the Office of Legal Counsel.  28 C.F.R. § 0.182.

For these reasons, the appeal in *In Re: Grand Jury Investigation* raises a substantial question as to whether the purported appointment of the Special Counsel violated the Appointments Clause because the Special Counsel was required to be appointed by Attorney General Jeff Sessions and not Deputy Attorney General Rod Rosenstein.

## II.     Conviction Is Likely to Be Reversed if the Appeal Is Granted

Mr. Papadopoulos waived his right to appeal, but he did not waive all rights to challenge a conviction unconstitutionally obtained.  Under the plea agreement, he may bring a motion based on newly discovered evidence under 28 U.S.C. § 2255 or Federal Rule of Procedure 60(b).  *See* Doc. No. 18 ¶ 9(E).  If the Court of Appeals were to grant the appeal in *In re: Grand Jury Investigation*, Mr. Papadopoulos could move for relief from judgment under Rule 60(b).  If the

9

entire apparatus that prosecuted Mr. Papadopoulos lacked authority to do so because it is deemed unconstitutional, such a motion would be granted, and his conviction would be reversed.

### III. Mr. Papadopoulos Risks Severe and Unnecessary Hardship If His Bail Is Not Continued

The balance of equities tip decidedly toward continuing Mr. Papadopoulos's bail. Here, absent a stay of the execution of his sentence, the hardship and unfairness to Mr. Papadopoulos is palpable: he risks unnecessarily serving a sentence of incarceration that was unconstitutionally obtained. A deprivation of liberty that is illegal or unnecessary is presumed to be an irreparable harm. *See Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 n.20 (D.D.C. 2002) (collecting cases).

On the other hand, the appeal in *In re Grand Jury Investigation* is fully briefed and argued, and merely awaits decision by the Circuit Court of Appeals. A modest adjournment of the date for Mr. Papadopoulos to report to serve his sentence does not prejudice any party or interfere with the public interest in the swift administration of justice. As discussed above, Mr. Papadopoulos poses no threat to the community and is not a flight risk. If the appeal is unsuccessful, he will undoubtedly serve his sentence.

### CONCLUSION

For the foregoing reasons, we ask the Court to continue bail pending the decision of the United States Court of Appeals for the District of Columbia in *In re: Grand Jury Investigation*, No. 18-3052. To do otherwise, requiring Mr. Papadopoulos to serve a sentence for a conviction that may be void, would be unjust.

Dated: November 16, 2018

                                  Respectfully submitted,

By: _____
Michael P. Hatley
DC Bar # 1027701
Pierce Bainbridge Beck Price & Hecht LLP
One Thomas Circle, NW, Suite 700
Washington, DC 20005
(213) 262-9333, ext. 222
mhatley@piercebainbridge.com

John M. Pierce (*PHV* Pending)
Pierce Bainbridge Beck Price & Hecht LLP
600 Wilshire Boulevard, Suite 500
Los Angeles, CA 90017
(213) 262-9333
jpierce@piercebainbridge.com

Christopher N. LaVigne (*PHV* Pending)
Caroline J. Polisi (*PHV* Pending)
Pierce Bainbridge Beck Price & Hecht LLP
20 West 23rd Street, 5th Floor
New York, NY 10010
(212) 484-9866
clavigne@piercebainbridge.com
cpolisi@piercebainbrige.com

*Attorneys for Defendant George Papadopoulos*