**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GEORGE PAPADOPOULOS,<br><br>*Defendant.* | Criminal Case No. 17-182 (RDM) |

## MEMORANDUM OPINION AND ORDER

On September 7, 2018, the Court sentenced Defendant George Papadopoulos to 14 days of incarceration, one year of supervised release, 200 hours of community service, and a fine of $9,500 for making false statements to the Federal Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001. The time to appeal his conviction or sentence expired on September 25, 2018, and he is scheduled to surrender to the Bureau of Prisons to begin serving his term of incarceration on Monday, November 26, 2018.

Over the past week, Papadopoulos has filed two motions seeking to delay his surrender date. First, on November 16, 2018, he filed a motion requesting that the Court "continue [his] bail pending [the] outcome of *In re: Grand Jury Investigation*, No. 18-3052 (D.C. Cir. Aug. 14, 2018)," Dkt. 57, an appeal currently before the D.C. Circuit challenging the appointment of Special Counsel Robert S. Mueller III. According to Papadopoulos, that appeal raises "a substantial question" and, if the D.C. Circuit concludes that the Special Counsel's appointment was unlawful, his conviction must be set aside. *Id.* at 6. Under these circumstances, Papadopoulos continues, it would be unjust to require that he serve his sentence before the D.C. Circuit renders its decision. *Id.* at 14. Second, on November 21, 2018, he filed a motion seeking

to stay his surrender date at least until this Court decides whether to grant his motion for bail pending the outcome of the *In re: Grand Jury Investigation* appeal and, if this Court denies that motion, until he has had the opportunity to appeal that decision to the D.C. Circuit. Dkt. 58. The Special Counsel opposes both motions.

For the reasons explained below, the Court agrees with the Special Counsel that Papadopoulos has failed to carry his burden of demonstrating that a delay in the execution of his sentence is warranted and will, accordingly, **DENY** both motions.

## I. BACKGROUND

On October 5, 2017, Papadopoulos pleaded guilty to one count of making false statements in violation of 18 U.S.C. § 1001. Dkt. 23. In the course of entering that plea, he admitted under oath that he made "material false statements and material omissions" during an interview with the FBI, which took place on January 27, 2017. Dkt. 19 at 1 (Statement of Offense ("SOF") ¶ 1). At the time of the interview, the FBI had "an open investigation into the Russian government's efforts to interfere in the 2016 presidential election." *Id.* Papadopoulos admitted in the Statement of Offense and at the plea hearing that he made the following material false statements and omissions:

*First*, he told the FBI "that his interactions with an overseas professor, who . . . Papadopoulos understood to have substantial connections to Russian government officials, occurred before . . . Papadopoulos became a foreign policy advisor to the" Trump presidential campaign (the "Campaign"). *Id.* at 2 (SOF ¶ 2a). He stated "multiple times" that the "information" he learned from the professor—that "the Russians possess[ed] 'dirt' on then-candidate Hillary Clinton in the form 'thousands of emails'"—was communicated to him "prior to joining the Campaign." *Id.* In truth, however, Papadopoulos "met the [p]rofessor on or about

March 14, 2016," *after* "he learned he would be an advisor to the Campaign." *Id.* Papadopoulos admitted that the professor "only took an interest in [him] because of his status with the Campaign," and he admitted that the professor told him about the "'thousands of emails' on April 26, 2016, when [he] had been a foreign policy advisor to the Campaign for over a month." *Id.*

*Second*, "Papadopoulos . . . told the investigating agents that the professor was 'a nothing' and 'just a guy talk[ing] up connections or something.'" *Id.* at 2 (SOF ¶ 2b). In truth, however, Papadopoulos "understood that the professor had substantial connections to Russian government officials (and had met with some of those officials in Moscow immediately prior to telling . . . Papadopoulos about the 'thousands of emails')." *Id.* Indeed, "over a period of months," Papadopoulos "repeatedly sought to use the professor's Russian connections in an effort to arrange a meeting between the Campaign and Russian government officials." *Id.* Papadopoulos also "failed to inform investigators that the [p]rofessor introduced him to" an individual in Moscow, who told Papadopoulos that he had connections to the Russian Ministry of Foreign Affairs ("MFA"). *Id.* at 11 (SOF ¶ 29). Although Papadopoulos and "the Russian MFA connection had multiple conversations over Skype and email about setting 'the groundwork' for a 'potential' meeting between the Campaign and Russian government officials," *id* at 6 (SOF ¶ 11), Papadopoulos failed to disclose this connection, "despite being asked if he had met with Russian nationals or '[a]nyone with a Russian accent' during the Campaign," *id.* at 11 (SOF ¶ 29) (alteration in original).

*Third*, Papadopoulos "claimed he met a certain female Russian national before he joined the Campaign" and that "their communications consisted of emails such as, 'Hi, how are you?'" *Id.* at 2–3 (SOF ¶ 2c). In truth, however, he had met her "on or about March 24, 2016, after he

had become an adviser to the Campaign; he believed that she had connections to Russian government officials; and he sought to use her Russian connections over a period of months in an effort to arrange a meeting between the Campaign and Russian government officials." *Id.* In an email to "the Campaign Supervisor," Papadopoulos described her as "Putin's niece" and "stated that the topic of their discussion was 'to arrange a meeting between us and the Russian leadership to discuss U.S.-Russia ties under President Trump.'" *Id.* at 4 (SOF ¶ 8).

On February 16, 2017, the FBI interviewed Papadopoulos for a second time with his counsel present. *Id.* at 12 (SOF ¶ 32). During that interview, "Papadopoulos reiterated his purported willingness to cooperate with the FBI's investigation," *id.*, but he failed to correct his prior false statements. The next day, moreover, he "deactivated his Facebook account, which . . . contained information about communications he had with the [p]rofessor and the Russian MFA Connection," and "created a new Facebook account." *Id.* (SOF ¶ 33). "On or about February 23, 2017, [he] ceased using his cell phone number and began using a new number." *Id.* (SOF ¶ 34). Papadopoulos was arrested on July 27, 2017. *Id.*

Pursuant to the plea agreement, the Special Counsel agreed not to further prosecute Papadopoulos for "conduct set forth in the . . . Statement of the Offense" and agreed "that a 2-level reduction" in the Sentencing Guidelines' base offense level would "be appropriate . . . , provided that [Papadopoulos] clearly demonstrate[d] acceptance of responsibility . . . [and] adhere[d] to every provision of th[e] Agreement." Dkt. 18 at 2. Papadopoulos, in turn, agreed to "waive the right to appeal [his] sentence . . . , except to the extent the Court sentence[d] [him] above the statutory maximum or guidelines range . . . or [to the extent he] claims that [he] received ineffective assistance of counsel." *Id.* at 6. In addition, he waived "any right to challenge [his] conviction . . . or sentence . . . or otherwise attempt to modify or change the

sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that [he] received ineffective assistance of counsel." *Id.* at 7.

On September 7, 2018, the Court sentenced Papadopoulos to a within-guidelines sentence of 14 days of incarceration, one year of supervised release, 200 hours of community service, and a fine of $9,500. The Court allowed Papadopoulos to self-surrender at an institution designated by the Bureau of Prisons, as notified by the Probation Office. Under these terms, Papadopoulos is due to begin serving his term of incarceration on Monday, November 26, 2018. Dkt. 57 at 5.

On November 16, 2018—more than a year after he entered his guilty plea and more than two months after the Court imposed his sentence—Papadopoulos filed the instant motion to "continue bail pending the decision of the [D.C. Circuit] in *In re: Grand Jury Investigation*, No. 18-3052." Dkt. 57 at 15. Five days later, he filed a further motion, seeking to stay his surrender date pending the resolution of his motion to continue bail by this Court and, if this Court denies the requested relief, by the Court of Appeals. Dkt. 58. Papadopoulos did not file a timely appeal of his conviction or sentence and, to date, he has not brought a collateral challenge of any type to his conviction or sentence.

## II. ANALYSIS

**A.    Motion to Continue Bail**

Papadopoulos asks that the Court postpone the execution of his sentence of incarceration pending the D.C. Circuit's resolution of the appeal in a different case—*In re: Grand Jury Investigation*. Dkt. 57 at 5. In that case, the Special Counsel served a witness with a grand jury subpoena. *See In re: Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018). The

witness, in turn, moved to quash the subpoena, asserting various constitutional and statutory challenges to the appointment of the Special Counsel. *Id.* First, the witness argued that the appointment violated the Appointments Clause of the Constitution, U.S. Const. art. II, § 2, cl. 2, because the Special Counsel is a "principal officer," and thus may be appointed only by the President with the advice and consent of the Senate. *Id.* at 612. Here, however, the Special Counsel was not appointed by the President, and his appointment was not subject to the advice and consent of the Senate. Second, he argued that, even if the Special Counsel is an "inferior officer," inferior officers may be appointed only pursuant to an authority that Congress has expressly vested in the appointing official. *Id.* Here, according to the witness, Congress did not vest the Attorney General—or the Deputy Attorney General—with authority to appoint a special counsel. *Id.* at 651. Third, the witness argued that, even if the Special Counsel is an inferior officer, and even if a statute authorized his appointment, an inferior officer may be appointed only by "the President . . . [,] the Courts of Law, or . . . the Heads of Departments," U.S. Const. art. II, § 2, cl. 2, and Attorney General Session's recusal from any investigations relating to the presidential campaign did not make Deputy Attorney General Rosenstein the "Head[] of the Department[]" for purposes of the Appointments Clause. *In re: Grand Jury Investigation*, 315 F. Supp. 3d at 662.

Chief Judge Howell rejected each of these contentions. *See id. at* 667. The witness, then, moved to be held in contempt. Dkt. 33, *In re: Grand Jury Investigation*, No. 18-gj-34 (D.D.C. June 14, 2018). Chief Judge Howell granted that request but stayed her contempt order pending appeal. *See* Dkt. 36, *In re: Grand Jury Investigation*, No. 18-gj-34.

The same arguments were also raised in a criminal case pending before Judge Friedrich. In that case, the defendant moved to quash the indictment, arguing that the Special Counsel was

not appointed in accordance with the Appointments Clause and that no statute vested the Attorney General—or the Deputy Attorney General—with authority to appoint a special counsel. *See United States v. Concord Management & Consulting LLC*, 317 F. Supp. 3d 598, 602–03 (D.D.C. 2018). Although employing somewhat different reasoning, Judge Friedrich reached the same bottom line as Chief Judge Howell: under controlling precedent, the appointment of the Special Counsel was lawful. *Id.*

The witness in *In re: Grand Jury Investigation* timely appealed to the D.C. Circuit, and Concord Management and Consulting LLC moved to intervene. *See* Motion for Leave to Intervene, *In re: Grand Jury Investigation*, No. 18-3052 (D.C. Cir. Aug. 22, 2018). The D.C. Circuit denied Concord's motion to intervene but allowed it to participate as amicus curiae. *See* Order, *In re: Grand Jury Investigation*, No. 18-3052 (D.C. Cir. Aug. 30, 2018). The parties completed briefing on October 10, 2018 and, on November 8, 2018, the D.C. Circuit heard oral argument.

Papadopoulos, of course, is not a party to either *In re: Grand Jury Investigation* or *United States v. Concord Management & Consulting LLC*. He nonetheless asks that the Court "continue [his] bail pending the" D.C. Circuit's decision because that decision "may directly impact the validity of [his] prosecution and conviction." Dkt. 57 at 5. In particular, he contends that he satisfies each of the requirements for bail pending appeal under the Bail Reform Act, 18 U.S.C. § 3143(b): he does not pose a risk of flight; the *In re: Grand Jury Investigation* appeal raises a "substantial question of law or fact;" and if the D.C. Circuit holds that the Special Counsel's appointment was unlawful, that decision would "likely . . . result in" the reversal of his conviction. *Id.* at 4–5. Alternatively, he argues that the Court has "broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere" and that

7

the Court should exercise that discretion here because it would be inequitable to require that he serve his sentence before the D.C. Circuit renders a decision in *In re: Grand Jury Investigation*. Dkt. 57 at 6 n.6 (quoting *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004)). For the following reasons, the Court is unconvinced.

Papadopoulos's principal argument fails at the threshold. The Bail Reform Act permits a district court to grant a criminal defendant bail pending appeal under specified circumstances. 18 U.S.C. § 3143(b). That authority, however, extends only to cases—unlike this one—in which the defendant has filed a timely appeal. The Act provides in pertinent part:

> [A] judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises substantial question of law or fact likely to result in—
>
>   i. reversal,
>   ii. an order for a new trial,
>   iii. a sentence that does not include a term of imprisonment, or
>   iv. a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b). The language of the statute is plain and unavoidable: in order to qualify for bail pending appeal, the defendant must (unsurprisingly) have "filed an appeal or a petition for a writ of certiorari" and that appeal must raise a "substantial question of law or fact likely to result in . . . reversal" or other relief from the conviction or sentence. *Id.* Nothing in the text of the Bail Reform Act contemplates postponing the execution of a defendant's sentence pending resolution of an appeal brought by a different party in a different case. Because the plain

8

language of the Act is controlling, that ends the matter. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("[W]here . . . the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.'") (citation omitted).

Papadopoulos seems to acknowledge this difficulty, conceding that he "waived his right to appeal" in his plea agreement. Dkt. 57 at 6 n.2. Nevertheless, he still maintains that the Court should grant him bail pending resolution of *In re: Grand Jury Investigation* because he "faces the prospect of unnecessarily serving a sentence of incarceration for a conviction that may in the near future be reversed." *Id.* That argument, of course, does nothing to answer the plain language of the statute. It also presents a dilemma. To the extent Papadopoulos waived his right to appeal his conviction on the ground that the Special Counsel's appointment was allegedly unlawful, he fails to explain how a decision in *In re: Grand Jury Investigation* would alter the scope or effect of that waiver. And, to the extent he contends that the challenge raised in *In re: Grand Jury Investigation* falls beyond the scope or effect of the waiver, *cf. Class v. United States*, 138 S. Ct. 798 (2018), he fails to explain why he did not bring a timely appeal. Because the language of the statute is clear, and because Papadopoulos fails to identify any reason why that language is not controlling on the facts of this case, the Court concludes that the Bail Reform Act does not afford Papadopoulos a basis for seeking the relief he requests.

Papadopoulos also argues—in a footnote—that, even if the "Court determines that the Bail Reform Act does not permit a motion for bail pending appeal under these circumstances," the Court "should consider . . . [the] motion . . . as an application for injunctive relief, which this Court has broad discretionary authority to consider and grant." Dkt. 57 at 6 n.2. Although he fails to identify any case in which a court has ever granted such an injunction (or has continued a defendant's bail pending resolution of an appeal in a different case), the Court will assume for

present purposes that courts have the discretion to do so under appropriate circumstances. Any such authority, however, must be exercised in light of the presumption that a judgment of conviction entered pursuant to a knowing and voluntary guilty plea is valid. *See United States v. Perholtz*, 836 F. 2d 554, 556 (D.C. Cir. 1988). On the present facts, the Court concludes that Papadopoulos has failed to carry his burden of demonstrating that, as a matter of equity and fair play, he should be permitted to disregard that presumption and to delay the execution of his sentence.

As an initial matter, although Papadopoulos recites the arguments raised in *In re: Grand Jury Investigation*, *see* Dkt. 57 at 6–13, he has failed to demonstrate that the D.C. Circuit is likely to conclude that the appointment of the Special Counsel was unlawful—and, indeed, he has failed even to show that the appeal raises a "close question" that "very well could be decided" against the Special Counsel, *id.* at 6 (quoting *United States v. Quinn*, 416 F. Supp. 2d 133, 136 (D.D.C. 2006)). Chief Judge Howell and Judge Friedrich have both issued thorough and carefully reasoned opinions rejecting the arguments that Papadopoulos now champions. *See Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598 (Friedrich, J.); *In re: Grand Jury Investigations*, 315 F. Supp. 3d 602 (Howell, C.J.). Those opinions reject the notion that the Special Counsel is a principal officer for purposes of the Appointments Clause; they conclude that controlling D.C. Circuit and Supreme Court authority holds that the statutes relied upon to appoint the Special Counsel vested the Acting Attorney General with the necessary authority; and they hold that the Deputy Attorney General served as the Acting Attorney General—and thus the Department head—for purposes of making the appointment. *Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d at 615, 618–23, 625–26; *In re: Grand Jury Investigations*, 315 F. Supp. 3d at 627, 651–58, 662–67. Based on the reasoning contained in those opinions, the

Court concludes that the prospect that the D.C. Circuit will reach a contrary conclusion is remote.

But, even putting that aside, the Court is unpersuaded that Papadopoulos has carried his burden of showing that he is entitled to injunctive or other equitable relief. Most notably, he has failed to demonstrate that a favorable ruling from the D.C. Circuit would "likely" result in "revers[al]" of his conviction. Dkt. 57 at 13–14. Recognizing that the time to appeal his conviction has long passed, Papadopoulos argues that he can still "move for relief from judgment under Rule 60(b)." *Id.* at 13. Although "the Federal Rules of Civil Procedure (including Rule 60(b)) do not apply to criminal cases," *United States v. Arrington*, 763 F.3d 17, 22 (D.C. Cir. 2017), a Rule 60(b) motion asserting a "federal basis for relief" from a "judgment of conviction" is "in substance . . . a habeas petition and should be treated accordingly." *Gonzalez v. Crosby*, 545 U.S. 524, 530–31 (2005). But, even if construed as a petition for writ of habeas corpus (or motion under 28 U.S.C. § 2255), any challenge to Papadopoulos's conviction would need to overcome his plea agreement, which "waives any right to challenge [his] conviction . . . in any collateral attack . . . , except to the extent such a motion is based on newly discovered evidence or on a claim that [he] received ineffective assistance of counsel." Dkt. 18 at 7.

Papadopoulos attempts to deal with this problem in a single sentence, merely noting that he "may bring a motion based on newly discovered evidence." Dkt. 57 at 13. That is all that he says, and it is unpersuasive. Nothing in *In re: Grand Jury Investigation* turns on "evidence" that was unavailable to Papadopoulos when he pleaded guilty, when he was sentenced, or when he declined to appeal his conviction. Nor can he plausibly argue that a decision from the D.C. Circuit, whatever the outcome of *In re: Grand Jury Investigation*, would constitute newly

available "evidence." To be sure, other grounds to bring a collateral challenge might exist. But this is the only ground that Papadopoulos invokes, and it is unavailing.

The Court, accordingly, concludes that Papadopoulos has failed to carry his burden of demonstrating that the Court should continue his current bail status pending a decision by the D.C. Circuit in *In re: Grand Jury Investigation*.

**B.     Motion to Stay Surrender Date**

This, then, leaves Papadopoulos's motion to stay the execution of his sentence at least until the Court of Appeals can decide whether to grant his request to continue his bail pending the resolution of *In re: Grand Jury Investigation*. Dkt. 58 at 1. In support of that motion, Papadopoulos argues that, should he be "required to surrender" before the Court of Appeals can decide whether he is entitled to continue his bail status, "the purpose of his motion would be frustrated." *Id*. The Court is unconvinced for two reasons. First, for the reasons explained above, it is unlikely that the Court of Appeals will conclude that his request for bail pending the resolution of an appeal brought by a different party in a different case is meritorious. Second, there is no reason why Papadopoulos could not have brought his motion for continued bail status with sufficient time to permit this Court to decide the question and to permit an orderly appeal of this Court's decision. Rather than do so, Papadopoulos waited until the eleventh hour to seek relief; indeed, he did not file his second motion—the stay request—until the last business day before he was scheduled to surrender to serve his sentence.[1] To grant a stay under these circumstances would run counter to the "strong equitable presumption against grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits

---

[1] He filed the motion on November 21, 2018, Dkt. 58, and the Court was closed for the Thanksgiving holiday on November 23 and 24.

without requiring the entry of a stay." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quoting *Nelson v. Campbell*, 541 U.S. 647, 650 (2004)).  Thus, if the "purpose of [Papadopoulos's] motion [to continue bail] [is] frustrated," he has only his own delay to blame.  Papadopoulos has not identified any extenuating circumstances—nor is the Court aware of any—that would overcome the presumption against granting such an eleventh-hour stay.

The Court, accordingly, concludes that Papadopoulos's motion for a stay pending his appeal of this decision lacks merit.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to continue bail, Dkt. 57, and motion to stay his surrender date, Dkt. 58, are hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 25, 2017